UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                            CASE NO. 5:21-CR-97

    -v-

THOMAS SCZERBANIEWICZ,

               Defendant.

---

# <u>SENTENCING MEMORANDUM</u>

DATED:   June 29, 2021

                                       Respectfully submitted,

                                       LISA A. PEEBLES
                                       Federal Public Defender

                         By:

                                         Randi J. Bianco, Esq.
                                         Assistant Federal Public Defender
                                         Bar Roll No. 507514
                                         Clinton Exchange, 3rd Floor
                                         4 Clinton Square
                                         Syracuse, New York   13202
                                         (315) 701-0080

## I.      PRELIMINARY STATEMENT

On April 1, 2021, the Defendant Thomas Sczerbaniewicz, (hereinafter "Thomas") pled guilty to an information charging him with Possessing and Accessing with the Intent to View Child Pornography in violation of Title 18 U.S.C. § 2252A(a)(5)(B).  He will also be admitting to violating supervised release for conduct related to the instant offense.  Thomas is currently scheduled for sentencing on July 28, 2021.

A Presentence Investigation Report (hereinafter referred to as "PSR") was prepared by the United States Probation Department on June 10, 2021, in anticipation of his sentencing.  The PSR sets forth a total advisory offense level of 21 (after acceptance) and his Criminal History Category is III which results in a guideline imprisonment range of 46 to 57 months. However, because the statutorily required minimum sentence of 10 years is greater than the maximum applicable guideline range, the guideline term of imprisonment is 120 months.

We are asking this Court to impose the mandatory minimum sentence of 10 years (120 months) plus post-release supervision as such a sentence would be sufficient but not greater than necessary to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553 (a)(2). Additionally, we ask the Court to impose a concurrent sentence on the supervised release violation as it encompasses the same conduct as the instant offense.

The Supreme Court's decision in *United States v. Booker* and *United States v. Fan-Fan*, 125 S.Ct. 738 (2005), excised the provisions in the Sentencing Statute which makes the guidelines mandatory and held that the guidelines are only advisory and can do no more than require a court to consider guideline ranges.  *See* 18 U.S.C. § 3553 (a)(4).  Therefore, in determining a sentence, a court must not only consider guideline calculations, but equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a)(2),  as well as the unique circumstances of the Defendant.  *See* § 3553 (a) (Supp. 2004).

2

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Paragraph (2) of this subsection.  The Court, in determining the particular sentence to be imposed shall consider:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2)     The need for the sentence imposed;

(A)     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     To afford adequate deterrence to criminal conduct;

(C)     To protect the public from further crimes of the defendant; and

(D)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. 3553.

## II.     THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

On January 28, 2021, Thomas possessed and viewed child pornography. He makes no excuses but seeks to explain why he committed this offense. The pandemic took a particularly harsh toll on Thomas. First, he lost his job at a medical answering service due to the pandemic and could not find another job. Then he developed alopecia or *complete* hair loss. Alopecia can be caused from  stress and life changes.[1]  Thomas has low self-esteem and having alopecia was very hard on him as he went completely bald, had no eyebrows and no eyelashes which made him feel ugly and freakish.  Then after contracting alopecia, a new housemate at the Circle of Hope, a residence for sex offenders, brought a bedbug infestation into the residence.  Thomas' room was infected, and he was bit by the bedbugs which resulted in his constant itching to the point of bleeding. After that, Thomas contracted COVID 19 and he remained very sick for weeks quarantined in his residence with bedbugs, no job and nothing to do.

---

[1] https://www.webmd.com/connect-to-care/hair-loss/causes-of-alopecia

Thomas has suffered from depression and anxiety for years, but the combination of the above events caused his mental health to spiral further downward.  In the throes of his depression and anxiety he engaged in looking at child pornography, something he used as a coping mechanism in the past to deal with his emotional pain [PSR ¶ 50-51].

Significantly, Thomas has been on supervised release since April 2014, almost seven years, and this is his first violation [PSR ¶ 31].

### III.    THOMAS' HISTORY AND CHARACTERISTICS

*Thomas's Background*

Thomas is 53 years old. He was born in Utica, New York and is a lifelong resident of Whitesboro.  He was raised by his parents and has two brothers. He has never been married and has no children.  Until he was sentenced to prison in 2009, he had always lived with his parents because he was very shy and has struggled with social anxiety.  The loss of all of his hair before the instant offense caused his social anxiety to increase.  He remains very close to his family who are very supportive of him as evidenced by the letters they and his supporters have written this Court [See attachment A].

   a)    *Education*

Thomas earned a two-year degree in banking and insurance in 1991 from Mohawk Valley Community College in Utica, New York. He attended SUNY Institute of Technology from January 1991 to December 1992, graduating with a four-year degree in Business/Public Management.

   b)  *Employment*

Prior to his first arrest in December 2008, Thomas was employed at Lutheran Care Ministries from 1995-2008, working in accounts receivable in the business office.  He lost his

job after his first arrest. After he was released from prison in April 2014, he held a series of jobs until he was laid off from his last employer at a medical answering service because of the pandemic [PSR ¶¶ 57-61].

        c)     *Mental Health*

Thomas has suffered from depression and anxiety for a number of years [PSR ¶ 48]. He was first diagnosed in in 2009 and began taking medication. After his first arrest his family paid for him to enter KeyStone Center Extended Care Unit, which is a residential treatment program in Pennsylvania for sexual compulsivity and trauma. He entered the program on March 19, 2009 and completed the program on April 30, 2009 [PSR ¶ 46]. He continued to suffer from depression, but it was treated with antidepressants.

At the time of this offense his depression had become so severe based on the number of stressors he faced that his medication was no longer working. Thomas does not offer his depression as an excuse but wants the Court to understand why he relapsed after almost seven years with no prior issues involving child pornography. Thomas continues to be treated for depression and is on medication [PSR ¶ 53].

The Sentencing Guidelines state that mental and emotional conditions are relevant for a departure if they "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Regarding physical health, the guidelines indicate that "physical condition or *appearance*, including physique, may be relevant in determining whether a departure is warranted if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.4 ((emphasis added) . For

Thomas, the combination of his physical and mental health problems makes his case distinguishable from the typical cases covered by the guidelines.  Here his long- standing social anxiety and depression are well documented. His condition was made worse by the loss of his job, followed by the loss of all of his hair, the isolation from his family and his contracting COVID.

IV.     **THIS SENTENCE SHOULD RUN CONCURRENLY WITH THOMAS' SENTENCE FOR VIOLATING SUPERVISED RELEASE PURSUANT TO U.S.S.G. § 5G1.3(d) AS IT IS BASED ON THE SAME CONDUCT AS THE VIOLATION OF PROBATION.**

The sentence for this offense should run concurrently with Thomas' sentence for his violation of supervised release.  The violation was based primarily on the instant offense [see PSR paragraph 31].  Thomas should not be sentenced twice for the same conduct. According to U.S.S.G. § 5G1.3(d) (Policy Statement) "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." A reasonable punishment here would be a concurrent sentence. Thomas's guidelines for the instant offense are 46-57 months. His sentence is already enhanced to a ten-year mandatory minimum because of his underlying prior conviction raising the mandatory minimum from five years to ten years pursuant to 18 USC § 2252A(b)(2)

Even assuming Thomas should receive additional punishment for breaching the trust of the Court while on supervised release, he is already receiving additional punishment for this offense in the calculation of his guidelines. His violation conduct has enhanced his criminal history because the new offense was committed while he was serving a period of supervised release. Not only did Thomas receive three criminal history points for his prior 2014 offense and a statutory enhancement of five additional years (PSR ¶ 31), but he received an additional two

points to his criminal history calculation for committing the instant offense while serving a period of supervised release (PSR ¶ 33). As a result, Thomas's criminal history has increased from category II to category III thereby causing an increase in his advisory guidelines. Any additional punishment for the supervised release violation is already taken into account by the increase in the mandatory minimum and the increase in his criminal history score because the offense was committed while on supervised release.

## V. REQUEST FOR JUDICIAL RECOMMENDATION

The defense requests that the Court recommend that the Bureau of Prisons designate Thomas be placed in a facility **close to home in Utica New York** so that his family members can visit him during his incarceration.

## VI.   CONCLUSION

In conformity with the Sentencing Guidelines, an imposed sentence should not be greater than what is necessary to accomplish the goals outlined in 18 U.S.C. §3553.  Based upon the foregoing, a combined sentence of 10 years (120 months years) imprisonment plus post-release supervision would satisfy the purposes of the Sentencing Reform Act.

DATED:  June 29, 2021                                   Lisa A. Peebles
                                                        Federal Public Defender

                                            By:     S/Randi J. Bianco, Esq.
                                                    Assistant Federal Public Defender
                                                    Bar Roll No. 507514
                                                    Clinton Exchange, 3rd Floor
                                                    4 Clinton Street
                                                    Syracuse, New York   13202
                                                    (315) 701-0080

TO:     Michael D. Gadarian, Esq., AUSA
        Courtney A. Tafel, USPO
        Thomas Sczerbaniewicz